IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TAVIS DOYLE,

Petitioner,

v.                                                No.  14-0364-DRH

UNITED STATES OF AMERICA,

Respondent.

## MEMORANDUM and ORDER

HERNDON, District Judge:

### I.  Introduction and Background

This matter is before the Court on petitioner's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 (Docs. 1, 13 & 18). In his § 2255 petition, Doyle brings a slew of arguments for relief all centering on claims of ineffective assistance of counsel. Essentially, Doyle claims that his attorneys were ineffective in *every* stage of his criminal case. The government filed its opposition (Doc. 21) and Doyle filed a reply and various other pleadings in support (Docs. 25, 28, & 29).  Based on the following and the applicable law, the Court **DENIES** the petition.

Further, having closely examined the record, the Court concludes that an evidentiary hearing is not necessary in this matter.  It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the

files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *Cooper v. United States*, 378 F.3d 638, 641–42 (7th Cir. 2004) (district court did not abuse its discretion in denying petitioner an evidentiary hearing where petitioner did not provide additional facts or assertions that would warrant a hearing).

On January 21, 2011, the grand jury returned a fourth superseding indictment against Doyle for maintaining drug-involved premises in violation of 21 U.S.C. § 856(a)(1)(Count 1); distribution of a controlled substance to a person under age twenty-one in violation of 21 U.S.C. § 859 (Count 2);    distribution of a controlled substance resulting in serious bodily injury to Julie A. Pohl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 3) and distribution of a controlled substance resulting in the death of Jonathan J. Ward in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 4). *United States v. Doyle*, 10-cr-30057-DRH; Doc. 97. Trial commenced as to these counts on February 7, 2011. *Id* at Doc. 137. On February 22, 2011, the jury found Doyle guilty on Counts 1, 2 and 4 of the fourth superseding indictment and found Doyle not guilty on Count 3 of the fourth superseding indictment. *Id*. at Docs. 170, 171, 173, 175, 176, 180 & 181.   On August 25, 2011, the Court sentenced Doyle to life imprisonment. *Id*. at Docs. 224 & 226. The Court sentenced Doyle to 240 months on Count 1; 720 months on Count 2; and a term of life imprisonment on Count 4. *Id*.   The Court also assessed a fine in the

amount of $3,000.00 and a special assessment of $300.00.  *Id.*  During the trial court proceedings, attorneys John D. Stobbs, II and Thomas Q. Keefe, IIII represented Doyle.  Thereafter, Doyle appealed and the Seventh Circuit Court of Appeals affirmed his sentence and conviction on September 11, 2012. *Id.* at Doc. 268; *United States v. Doyle*, 693 F.3d 769 (7th Cir. 2012).  On appeal, Gianni Cutri and Leslie M. Schmidt represented Doyle. The Supreme Court denied *certiorari* on March 18, 2013.  *Doyle v. United States*, 133 S.Ct. 1611 (March 18, 2013).

In his original § 2255 petition, defendant raises twenty-seven grounds for relief all which center around claims of ineffective assistance of counsel. His gripes range from ineffective assistance of counsel regarding jury instructions to ineffective assistance of counsel for failing to object to the fine contained in his judgment.  For the sake of clarity and judicial economy, the Court will address together similar grounds for relief.[1]

## II. 28 U.S.C. § 2255 Standard

Section 2255 was enacted to provide the court of the district in which a defendant is *sentenced* the same remedies available by habeas corpus

---

[1] Doyle has taken a "scattershot" approach to his petition, raising many different issues with subparts.  The Court notes advice previously given by the Seventh Circuit Court of Appeals: "Losers in a trial can go hunting for relief on appeal with a rifle or a shotgun. The rifle is better…. [T]he shotgun approach may hit the target with something but it runs the risk of obscuring significant issues by dilution." *United States v. Stokes*, 726 F.3d 880, 887 (7th Cir. 2013)(quoting *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 955 (7th Cir. 1996)); *see also Fifth Third Mortg. Co. v. Chi. Title Ins. Co.*, 692 F.3d 507, 509 (6th Cir. 2012) ("When a party comes to us with nine grounds for reversing the district court, that usually means there are none."). The Court finds that most of Doyle's grounds for relief are frivolous or so obviously meritless that the Court need only address them summarily.

proceedings to the court of the district in which a prisoner is *confined*. *Hill v. United States*, 368 U.S. 424, 427 (1962).  "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).  Under Section 2255, relief "is available when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum allowed by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008)(quoting 28 U.S.C. § 2255).

A Section 2255 motion is not a substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time.  *See Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007)(Section 2255 motion is "neither recapitulation of nor a substitute for a direct appeal.")(citation omitted).  As such, if a Section 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal.  *See Sandoval v. United States*, 574 F.3d 847, 850-51 (7th Cir. 2009); *Torzala*, 545 F.3d at 522.  Because claims of ineffective assistance of counsel usually involve evidence outside of the trial record, such claims may be brought for

the first time in a Section 2255 motion.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. James*, 635 F.3d 909, 916 (7th Cir. 2011).  Petitioner bears a heavy burden to establish ineffective assistance of counsel.  *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). These claims are evaluated under the two-prong *Strickland* test.  *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007)(citing *Strickland v. Washington*, 466 U.S. 688, 690, 694 (1984)).  Petitioner must establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the petitioner in such a way that, but for counsel's errors, the result of the proceedings would have been different.  *Strickland*, 466 U.S. at 688, 695. The Court is not required to analyze both the performance and prejudice prong, because the failure to satisfy either prong is fatal to the claim. *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993); *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir. 1990).

To show that counsel's performance fell below an objective standard of reasonableness, a petitioner must identify "acts or omissions of counsel that could not be the result of professional judgment.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011).  To meet the prejudice prong, a petitioner need only show a

reasonable probability that counsel's conduct altered the outcome, or, in other words, a probability sufficient to undermine confidence in the outcome. M*cElvaney v. Pollard*, 735 F.3d 528, 533 (7th Cir. 2013).

### III.  Analysis

In the instant case, the Court cannot say that Doyle's attorneys significantly prejudiced Doyle or that their representation fell below an objective standard of reasonableness.  Further, the Court cannot say that despite these alleged errors the results of the proceedings would have been different.  Frankly, the government presented an abundance of evidence at trial establishing Doyle's guilt beyond a reasonable doubt on Counts 1, 2 and 4.  Further, the Court finds that Doyle failed to meet either prong under *Strickland* and that his claims are without merit.

First, Doyle claims that both trial counsel and appellate counsel erred by not challenging the incorrect standard used in the jury instruction regarding the special verdict for Count 4.  The Court rejects this argument as the jury instruction was and still is a correct recitation of the law.

In January 2014, the Supreme Court issued its Opinion in *Burrage v. United States*, 134 S.Ct. 881 (2014) imposing a new and stricter burden of proof that the government needs to prove in order to establish that "death resulted" from drug distribution.   The Supreme Court held: "[a]t least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21

U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Id*. at 892. It emphasized that "a phrase such as 'results from' [when given its ordinary meaning] imposes a requirement of but-for causation." *Id.* Therefore, the government must meet a "but for" causation test, i.e., that "but for" the drug which a defendant distributed, the overdose victim would not have died. *Id*. at 888-892. It is no longer sufficient for the government to prove merely that that drug which a defendant distributed "contributed" to an overdose victim's death, i.e., as part of a fatal mixed-drug cocktail. *Id.* However, at the time of Doyle's jury trial and sentencing, the law in the Seventh Circuit regarding death resulting from drug distribution was contained in *United States v. Hatfield*, 591 F.3d 945 (7th Cir. 2010). *Hatfield* held that in order for a defendant to receive the "death resulting" enhancement, the government must prove that the ingestion of the drugs which a defendant distributed actually caused an overdose victim's death under the "but for" causation test. *Id.* at 949-51. Thus, *Hatfield* imposed the same burden of proof on the government as *Burrage* now requires.

The jury instruction given during Doyle's trial provided in part the following:

> In the Special Verdict Forms prepared for you, you are asked to determine whether the United States has established, beyond a reasonable doubt, that the individuals named in the Fourth Superseding Indictment died, or suffered serious bodily injury, as a result of the use of a controlled substance, to wit: heroin, distributed by defendant.

*Doyle*, 10-cr-30057-DRH; Doc. 188, p. 32.  Consistent with both *Hatfield* and *Burrage*, the use of the phrase "as a result of the use" in the jury instruction at Doyle's trial signifies a requirement of the but-for causation. Thus, there was no need for the attorneys to challenge the instruction as it would have been futile. *See Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996); *Martin v. Evans*, 384 F.3d 848, 852 (7th Cir. 2004)("counsel is not required to raise every non-frivolous issue on appeal.").

Further, Doyle argues that trial counsel were ineffective by failing to ask for a motion of acquittal on Count 4 after the emergency room doctor testified that the cause of death was lack of prompt emergency care.  The Court rejects Doyle's argument that the failure of someone to administer the antidote drug is an intervening role in the "but for" causation of Ward's death.  The jury found that Doyle distributed heroin to Ward and that heroin caused Ward's death.  He cannot rely on the fact that no one at his house that day, including him, acted fast enough to get Ward medical assistance to prevent that death.  Moreover, the evidence presented through testimony revealed that Doyle would not let anyone call 911 and that Doyle's car blocked the truck that Ward was in so that people at the house could not leave to get Ward medical care.  Doyle told the people that Ward needed to sleep it off.  In addition, Dr. Folkert did not establish in his testimony that Ward's cause of death was lack of prompt emergency care. Dr. Folkert testified that determining Ward's cause of death was not part of

his job as a specialist in emergency medicine and that a physician specializing in another field would be responsible for making that determination.

Next, Doyle maintains that counsel were ineffective for not pursuing the fact that the government withheld Ward's time of death.  He claims that his rights under *Brady*, *Jencks* and other rules were violated because this information was withheld.  Further, Doyle maintains that since the time of Ward's death was not established, he was wrongly convicted.  The Court rejects all of Doyle's arguments surrounding Ward's time of death.  Doyle is plain wrong as there was no violation.  The government provided the defense with Ward's certificate of death and the medical examiner's records as to Ward's death during discovery.  Further, as the government argues, there was ample evidence to convict Doyle on Count 4, even with the supposed violation.  Many witnesses testified during trial that they saw Ward ingest heroin that Ward bought/received from Doyle at Doyle's house on many different occasions.  In fact, Michael Klincar testified that he witnessed Doyle preparing heroin for Ward earlier in the day on the day of Ward's death at Doyle's house. Further, Klincar testified that he saw a "needle and a spoon with dark residue in it" and "knew it was heroin" in Doyle's bedroom at the time that Ward overdosed in the bedroom. Additionally, witnesses testified that Doyle told them that Ward "went out" after ingesting heroin at Doyle's house on the day that Ward died.  Thus, the

Court finds that there was not violation as the government provided the information.  However, assuming *arguendo* that there was a violation, the Court finds that Doyle cannot show that he was prejudiced by the alleged violation as there was ample evidence to show that Ward died as a result of his ingestion of heroin he received from Doyle at Doyle's house.

Doyle also argues that defense counsel were ineffective for failing to object to an incorrect jury instruction as to Count 1.  Specifically, Doyle argues that the instruction should have said "significant or important reason" rather than "purpose."  Doyle admits in his pleadings that "Mr. Doyle was merely a drug USER himself (who sometimes shared drugs or allowed others to use their own drugs when they were visiting his residence)."   Also as to this Count, Doyle contends that counsel were ineffective for failing to have a "special verdict" on this Count.  The Court rejects this argument as Doyle is mistaken.  The Court properly instructed the jury and this claim is procedurally barred.

The elements instruction as to Count 1 provided in part: "Second, that the defendant used and maintained this place for the purpose of manufacturing, distributing or using a controlled substance; ..." *Doyle*, 10-cr-30057-DRH; Doc. 188, p. 21.  Also, the Court gave this instruction:

> In proving Count 1, the government is not required to prove that the defendant used and maintained the named place for the sole purpose of manufacturing, distributing or using a controlled substance.  Rather, the government must prove that manufacturing, distributing or using a controlled substance

> was a purpose for the defendant using and maintaining that place.

*Id.* at Doc. 188, p. 22.  Lastly, the Court instructed the jury as to "purpose" the following:

> The 'purpose' that the government must prove is that of the defendant.  It is not enough for the defendant to use and maintain a place that is used by others for unlawful purposes; the defendant himself must have used and maintained the place for his own goal of manufacturing, distributing or using a controlled substance.  Therefore, mere association with persons committing a crime, or knowledge of another's person's criminal acts, or both, are not sufficient, without more, to establish defendant's guilt on Count 1.  Similarly, presence at the scene of a crime by virtue of living at the residence and knowledge that a crime is being committed are not sufficient by themselves to establish the defendant's guilt.

*Id.* at Doc. 188, p. 24.  These instructions track the applicable law in the Seventh Circuit.  *See United States v. Church*, 970 F.2d 401, 405-06 (7th Cir. 1992)(Seventh Circuit held that government need not prove that drug use/distribution was the sole purpose for which defendant maintained the premises at issue.  The Court stated "[r]ather then judicially modify the phrase 'for the purpose," we agree that the meaning of that phrase lies within the common understanding of jurors and needs no further elaboration.").  Thus, counsel cannot be faulted and was not ineffective for not objecting to long standing law regarding 21 U.S.C. § 856(a)(1), maintaining drug-involved premises, in the Seventh Circuit.  Moreover, the facts presented at trial overwhelming support a finding of guilty on this Count.  Lastly, as to the special verdict argument, the Court finds that this non-constitutional issue could have been but was not raised on appeal.

Thus, it is procedurally barred.  *See Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994).

Doyle next contends that trial counsel were ineffective when they "failed to call Katina Valintine's parole officer (and appellate counsel failed to raise the issue on appeal) knowing that he would reliably document that he regularly visited Mr. Doyle's residence and that it was NOT the 'drug premises' as alleged in Count 1."  Related to this argument, Doyle argues that counsel were ineffective for failing to document that federal and local law enforcement regularly visited Doyle's residence for non-criminal reasons, thus, the police knew it was not a drug premises.  "[A] lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review."  *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997); *United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir. 1990)("The Constitution does not oblige counsel to present each and every witness suggested to him.  In fact, such tactics would be considered dilatory unless the attorney and the court believe the witness will add competent, admissible and non-cumulative testimony to the trial record.").  Doyle failed to provide any specific facts or omissions that would overcome this Court's presumption that counsel were effective, and failed to show that counsel's assistance fell below an objective standard of reasonableness, or that he was prejudiced as a result.  Doyle has provided no basis for the Court to

conclude that the result of the proceedings would have been different but for counsel's deficient performance. Doyle did not offer any support for his claim that his residence was not a "drug premises."  He does not explain how or why he knows that Ms. Valintine's parole officer's testimony would be favorable to him.  As stated previously, Doyle admits in these pleadings that he was using drugs at his house and allowed others to use drugs sometimes at his house.  The government produced witness after witness (too many to count) at trial that testified to the same thing: they saw Doyle accept money in exchange for either heroin or crack and some of these witnesses also testified that they went to Doyle's house to buy drugs on at least 50 to 100 occasions.  Clearly, there was plenty of evidence to convict Doyle on Count 1.

Further, Doyle argues that counsel were ineffective for not trying to get Carol Blakenship's testimony excluded as it was "incredible."  The Court agrees with the government's assessment of Blakenship's testimony. Further, the Court finds that this claim fails both prongs of *Strickland*. Blakenship provided eyewitness testimony regarding Ward's death and defense counsel crossed examined her in depth.  Her testimony was relevant to the issues contained in the fourth superseding indictment, in particular, Count 4.  Thus, any attempt by defense counsel to exclude her testimony would have been futile.  Moreover, as stated previously, there was abundant evidence to support a conviction on Count 4, even if Blankenship

had not testified.   Doyle's counsel were not ineffective with regard to this claim.

Doyle claims that counsel were ineffective for failing to object to a materially incorrect transcript of Doyle's call to the medical examiner and its publication to the jury.  The government counters that it was proper for defense counsel to stipulate to the transcript in this instance.  The Court agrees with the government and finds that counsel were not ineffective as to this claim.

The Court provided the jury with an instruction as to recorded conversations and transcripts.  That instruction stated:

> You have heard recorded conversations.   These recorded conversations are proper evidence and you may consider them, just as any other evidence.
> When the recordings were played during trial, you were furnished transcripts of the recorded conversations prepared by government agents.
> The recordings are the evidence, and the transcripts were provided to you only as a guide to help you follow as you listen to the recordings.   The transcripts are not evidence of what was actually said or who said it.   It is up to you to decide whether the transcripts correctly reflect what was said and who said it.   If you noticed any difference between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read.   And if after careful listening, you could not hear or understand certain points of the recordings, you must ignore the transcripts as far as those points are concerned.

*Doyle*, 10-cr-30057; Doc. 188, p. 9.  This is a proper instruction to be given when recorded conversations and transcripts are utilized during trial.

Clearly, the instruction advised the jury of how both the recorded

conversations and the transcripts are to be used/considered during the trial deliberations.  Further, a defense counsel's decision to stipulate to evidence is a strategic trial tactic and does not support a claim for ineffective assistance of counsel.  *See United States v. Giangrosso*, 779 F.2d 376, 380 (7th Cir. 1995)("The Supreme Court's decision in *Strickland* makes the law eminently clear that the judgments of trial counsel involving strategic decisions made at trial will not be considered as a proper basis for bringing a Sixth Amendment ineffective assistance of counsel claim.").   The Court finds that Doyle's ineffective assistance of counsel claim is without merit.

Thereafter, Doyle argues that counsel were ineffective because "[e]ven the government states that the defense 'strategy' (for Count IV) was textbook IAC."  Doyle does not include any specific reasons to support his claim.  This argument is a prime example of the "scattershot" approach that Doyle has taken throughout his section 2255.  Thus, the Court finds that Doyle has failed to establish either prong of *Strickland*.

Additionally, Doyle asserts that defense counsel were ineffective for failing to investigate and interview the former medical examiner, Dr. Dutra and that counsel were ineffective for failing to raise this issue on appeal.  As stated previously, the decision to call a particular witness is considered a strategic choice and generally not subject to review.   *See Balzano*, 916 F.2d at 1294.  Thus, Doyle fails to establish the objective standard for reasonableness under *Strickland*.   Further, Doyle fails to establish

prejudice under *Strickland*.   Dr. Timothy Burch, a deputy medical examiner in the St. Louis City Medical Examiner's officer (same office where Dr. Dutra performed his fellowship), testified at trial as to the procedures followed by the medical examiner's office and as to the specifics of Ward's autopsy.   Dr. Burch testified that he and Dr. Dutra worked together on Ward's body.   Dr. Burch finished the postpartum report without Dr. Dutra because Dr. Dutra left the employ of the medical examiner's office before the report could be completed.   Therefore, it is reasonable to assume that Dr. Burch was as qualified, if not more qualified, to testify about Ward's autopsy.   Thus, Doyle has not established prejudice as to this claim.

Next Doyle argues that his *Brady, Giglio* and other rights were violated when the government failed to turn over Ward's cellphone records and when the government failed to timely turn over Blakenship's cellphone records. In this same vein, Doyle argues counsel were ineffective for failing to get the government to turn over the records.  According to the records in these cases, the government did turn over all of the phone records, in their entirety, it obtained during the course of Doyle's case.  The record suggests that all of the records were sent to Doyle were previously also delivered to Doyle's counsel either prior to or during the criminal trial.  The government informed the Court that it has no other phone records to give to Doyle.

Clearly, there was no violation of *Brady*, *Giglio* or any other rule.  Thus, Doyle's claims regarding cellphone records fail on the merits.

Doyle further argues that counsel were ineffective for failing to obtain a defense toxicology expert and were ineffective for failing to explain the evidence to the jury.  He argues that a retained expert would have informed them that "deaths SOLEY from heroin intoxication occur almost instantly (like the 'died with a needle in his arm' claim that AUSA Garrison made to the Grand Jury), so defense counsel would know for sure that Jonathan Ward did NOT die from heroin intoxication and so Mr. Doyle was NOT GUILTY of Count IV."  The Court disagrees.  The Court finds that this claim fails both prongs of *Strickland*.  The decision whether or not to call a witness is considered a strategic choice that falls within the "exercise of reasonable professional judgment." *Balzano*, 916 F.2d at 1295.    Doyle offers nothing but speculation that an expert would have made a difference. *United States v. Ashimi*, 932 F.2d 643 (7th Cir. 1991).  The record reflects that defense counsel thoroughly cross-examined the government's medical witnesses.  Further, Doyle was acquitted on Count 3, which alleged that Doyle had distributed heroin to Julie Pohl, who suffered an overdose but did not die. There is no reasonable probability that, but for defense counsels' alleged failure to obtain a defense toxicology expert, the result of the trial would have been different.

Doyle also complains that counsel were ineffective when he was forced to go to trial much quicker than the statutorily allowed thirty days after his arraignment on the fourth superseding indictment.  The Court agrees with the government that Doyle misunderstands his rights under 18 U.S.C. § 3161.  Generally, the Speedy Trial Act requires the government to bring a defendant to trial within 100 days of the arrest, with the 100 days broken into two time periods: 30 days between arrest and indictment, 18 U.S.C. § 3161(b), and 70 days between indictment and trial. The statutory provision does not guarantee him a thirty-day delay after the filing of the superseding indictment.  *See United States v. Rojas-Contreras*, 474 U.S. 231 (1985)("Congress did not intend that the thirty-day trial preparation period begin to run from the date of the filing of the superseding indictment").  Rather, the statute allows thirty-days between his *first* appearance through counsel and the beginning of trial.  Moreover, the fourth superseding indictment did not add new charges; it dropped counts.  Specifically, the fourth superseding indictment did not contain Count 5 - travel with intent to engage in illicit sexual conduct; Count 6 - transportation with intent to engage in criminal sexual activity or the introductory paragraphs related to those counts that were contained in the third superseding indictment.  Clearly, Doyle and his defense counsel were aware of the charges in the fourth superseding indictment.  Thus, Doyle

was not forced to proceed to trial on the charges in the fourth superseding indictment and his rights were not violated.

Next, Doyle contends that his counsel were ineffective and deprived him of his Fifth Amendment right to testify on is behalf and that appellate counsel did not raise this issue on appeal.   The Court rejects this contention as the record suggests otherwise.   Attorney John Stobbs attested that: "[t]hroughout my representation with Mr. Doyle we discussed whether or not he would testify at trial.   After discussing this matter with him, Mr. Doyle decided that he did not want to testify on his behalf at trial.   This decision was made by Mr. Doyle." (Doc. 21-1).   Further, the Court questioned Doyle about this after the government rested.   The following took place:

> THE COURT: Is defendant going to put on any evidence?
> MR. KEEFE: No, Sir.  If I could make a quick record. We've – earlier this morning we spoke to Mr. Doyle about his constitutional right to testify, and he's indicated he'll follow our advice and not testify.
> THE COURT: That's true, Mr. Doyle?
> THE DEFENDANT: Yes, sir.

Trial Transcript from Day 9 of the jury trial.   Thus, the record indicates that it was Mr. Doyle's choice not to testify.   Further, Doyle has not established that there is reasonable probability that the result of the trial would have been different had he testified at trial.   *See Underwood v. Clark*, 939 F.2d 473 (7th Cir. 1991).   Likewise, this claim fails too.

Next, Doyle claims that appellate counsels were ineffective on appeal by ignoring 67% of the counts and fumbling the oral argument.   Doyle

claims that appellate counsel failed to argue or appeal two-thirds of the counts of the conviction and that counsel argued to the appellate court that it was Doyle's choice not to raise issues as to those counts.  Doyle also argues that appellate counsel failed to address a key exhibit.

"Effective advocacy does not require the appellant attorney to raise every non-frivolous issue under the sun ..." *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996). "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons, rather than sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1, (2003).  Furthermore, it is not professionally unreasonable for an attorney vested with the discretion to decide whether or not to appeal to decline to prosecute a meritless claim. Thus, an attorney's decision not to pursue a frivolous claim on appeal does not amount to ineffective assistance *per se.*

Doyle cannot show prejudice because the claim lacks merit.  He failed to provide "a careful presentation of those issues which allegedly should have been raised on appeal."  *Gray v.* Greer, 800 F.2d 644, 647 (7th Cir. 1985). A review of the record indicates that Doyle's appellate counsel raised appropriate issues for examination by the Seventh Circuit. On appeal, Doyle's counsel raised three issues: (1) the introduction of autopsy paperwork created by Dr. Dutra without good cause for not having him testify in violation of the Sixth Amendment; (2) government

interference during the defense's cross examination of witness Michael Klincar in violation of the Sixth Amendment; and (3) cumulative government misconduct during the trial in violation of due process and Doyle's right to a fair trial under the Fifth Amendment.   Prevailing on these issues on appeal would have led to a new trial on Counts 1, 2 and 4. Moreover, Doyle has not set forth specifically which issues were ignored. *Gray*, 800 F.2d at 646 ("only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.").   Simply put, Doyle has offered nothing but speculation that raising these no specific claims would have resulted in a remand. This argument fails.

Doyle also argues that defense counsel failed to impeach government witnesses with prior statements and testimony or by using prior convictions.   The Court rejects this argument as the trial record demonstrates that the witnesses were impeached and Doyle never identifies which prior statements or convictions defense failed to use.   Like his previous counts, Doyle failed to establish that there is a reasonable probability that the result of the trial would have been different had counsel used the prior statements and testimony of witnesses.   The record reveals that counsel attempted to undermine the credibility of many government witnesses during cross-examination by pointing to certain times when the particular witness had lied or been untruthful because of drug use.

Specifically, defense counsel attempted to call into question the following witnesses' credibility on the basis of their drug habits: Jenna McGlasson, Jessica Williams, Angela Brown, Garica-Mauer and Candice Clark.   In addition defense counsel attempted to impeach certain witnesses by bringing up their criminal histories.   Those witnesses include: Heather Sandoval and James Crawford.   The record clearly reflects that defense counsel questioned the witnesses on their drug habits and their criminal pasts.   Counsel cannot be faulted for doing something that they did do.

Additionally, Doyle contends that counsel were ineffective because they failed to properly investigate the sex offenses against him.   He claims that almost all of the pre-trial defense resources were focused on those charges and therefor he had no viable defense resources for the serious drug charges that he was convicted.   The Court rejects this argument.   It was reasonable for defense counsel to investigate these counts in the third superseding indictment.   Counsel would have provided ineffective assistance had they not investigated and prepared for trial on these counts. Defense counsel did not know and could not have known that those counts would be dropped before the commencement of trial.   Doyle also fails to establish that the result of trial would have been different.   Defense counsels did not provide ineffective assistance as Doyle argues.

Doyle maintains that defense counsel were ineffective when they failed to object to the government's references to pimping and

transportation of minors in the government's opening statements.  Contrary to Doyle's claim, the government did not make any references to pimping or the transportation of minors in the opening statement. The government did mention that Doyle's home is located in the prostitution district of East St. Louis and that many of the witnesses were going to be prostitutes and drug addicts.  These statements provided a background for the jury.  Moreover, opening statements are not evidence and the Court instructed the jury that they are not evidence.  Thus, defense counsel did not provide ineffective assistance of counsel as to the opening statement and Doyle cannot show prejudice from the opening statement.

Next, Doyle, who is African-American, argues that trial counsel and appellate counsel were ineffective for failing to protect his constitutional right to a jury of his racial peers.  The Court notes that Doyle never states whether or not there were any African-Americans on his jury.  The Court rejects Doyle's arguments.

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held that the state's exercise of peremptory challenges to exclude jurors on account of race violated the defendant's rights under the Equal Protection Clause.  In order to establish a violation of *Batson*, the defendant must do more than merely point to the fact that the prosecutor excluded an African-American venire person.  *United States v. Cooke*, 110 F.3d 1288, 1301 (7th Cir. 1997).  Instead, *Batson* requires a three-step inquiry: (1) the

defendant must establish a *prima facie* case that a peremptory challenge was used to exclude a juror on the basis of race; (2) once the defendant establishes a *prima facie* case, the prosecutor must provide a race-neutral explanation; and (3) the court must determine whether the objecting party has carried his burden to prove purposeful discrimination. *Snyder v. Louisiana*, 128 S.Ct. 1203, 1208 (2008); *United States v. Cooper*, 19 F.3d 1154, 1158 (7th Cir. 1994). The burden of persuasion never shifts from the opponent of the strike. *Purkett v. Elem*, 514 U.S. 765, 768 (1995)(per curiam). Here, Doyle has not provided any facts regarding the racial composition of the relevant jury community nor has he provided any facts to a specific venire person that was excluded. Trial counsel's performances were not unreasonable as to this claim and Doyle failed to establish the first prong of *Strickland*.

Further, Doyle contends that both his trial counsel and appellate counsel provided ineffective assistance of counsel by failing to object to the fact the no drug quantities were listed in Counts 2 and 4 of the fourth superseding indictment. Doyle is wrong. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for the crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." Here, the penalties imposed on Doyle in Counts 2 and 4 did not exceed the prescribed statutory maximum, thus, there was no

requirement that specific drug quantities be listed in the fourth superseding indictment.  Therefore, there was no need for defense counsels to object to this during at the trial level or to object to this at the appellate level.

Doyle asserts that defense counsel were ineffective by failing to object to the information contained in his Presentence Investigation Report.  Doyle also complains about not being allowed to present an allocution to the Court during sentencing.  This argument fails the first prong of *Strickland*. Trial counsel did object to many paragraphs in the PSR.  Specifically, counsels objected to paragraphs 10, 11, 12, 14, 17, 20, 21, 22, 23, 31, 33, and 34.  Doyle also made contributions during the sentencing hearing. In his petition, Doyle makes barebones assertions about the objections that should have been made.  Moreover, during the sentencing hearing, Doyle was very disruptive despite this Court's patience with him.  The Court admonished Doyle several times to calm down and warned him that if he refused to calm down he would be removed from the proceedings.  Doyle refused to listen.  Because of Doyle's disruptive and disrespectful conduct, the Court had no choice but to remove him from the Courtroom during the final portion of sentencing.  The United States Marshals placed Doyle in a holding cell equipped with a speaker located right outside the courtroom. Doyle was able to hear the proceedings.  Doyle's failure to provide an allocution was based on his actions and his actions alone.

Lastly, Doyle argues that he was improperly assessed a fine and that both trial counsel and appellate counsel were ineffective for failing to challenge the fine. Counsel were not ineffective.  The fine assessed against Doyle was within the sentencing guidelines range for the offenses of conviction.  There was no need for counsels to object.

The Court concludes that Doyle's claims that his counsel were ineffective are without merit as the attorneys were not ineffective in representing Doyle in this criminal matter.  In fact, the Court concludes that his lawyers' actions were reasonable and sound in light of the horrible circumstances surrounding this case.

While Doyle may think that his sentence is harsh; his sentence and conviction are legal.  He has not shown that his sentence was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.  Thus, the Court rejects Doyle's 28 U.S.C. § 2255 petition/motion.  Finally, the Court notes that letting Doyle's conviction and sentence stand would not result in a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 495 (1986).

Under the 2009 Amendments to Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant." Thus, the Court must determine whether Doyle's claims warrant a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; he may appeal only those issues for which a certificate of appealability have been granted.  *See Sandoval*, 574 F.3d at 852.  A *habeas* petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right.  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). Under this standard, petitioner must demonstrate that, "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Where a district court denies a *habeas* petition on procedural grounds, the court should issue a certificate of appealability only if (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 485.

As to petitioner's claims, the Court finds that reasonable jurists would not debate that the petition does not present a valid claim of the denial of a constitutional right, or that this Court is barred from reviewing

the merits of petitioner's claims.  Reasonable jurists could not debate that the petition should have been resolved in a different manner, as petitioner's claims of ineffective assistance of counsel do not present evidence of constitutionally deficient attorney performance; nor do they demonstrate resulting prejudice. Therefore, the Court declines to certify any issues for review pursuant to 28 U.S.C. § 2253(c).

## IV.   <u>Conclusion</u>

Accordingly, the Court **DENIES** Doyle's motion under 28 U.S.C. §2255 motion to vacate, set aside or correct sentence by person in federal custody.  The Court **DISMISSES with prejudice** this cause of action.  The Court **ORDERS** the Clerk of the Court to enter judgment reflecting the same.  Further, the Court **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed this 4th day of May, 2015.

Digitally signed by David R. Herndon
Date: 2015.05.04 15:07:37 -05'00'

**United States District Court**